301 So.2d 513 (1974)
Milan E. HARDING, Appellant,
v.
STATE of Florida, Appellee.
No. 70-882.
District Court of Appeal of Florida, Second District.
October 9, 1974.
Rehearing Denied November 5, 1974.
Kenneth C. Deacon, Jr. of Harris, Barrett & Dew, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Warren H. Petersen, Asst. Atty. Gen., Tampa, for appellee.

ON REHEARING
McNULTY, Chief Judge.
We grant appellant's petition for rehearing, withdraw our former opinion affirming his conviction and substitute the following reversal in its stead.
*514 The only question in the case involves the legality of a seizure of marijuana from Harding in his own home. Immediately upon the conclusion of a lengthy hearing on a motion to suppress, which was denied, the case was submitted to the trial judge for decision without the taking of further testimony. To begin with, we find no merit in the contention that review of the propriety of the judgment is precluded by Tennant v. State[1], Fraterrigo v. State,[2] and Robertson v. State[3], for the reason that the reception of the evidence was clearly over the objection of the defendant and followed immediately upon the conclusion of a full scale proceeding in which the object was to suppress the evidence. Our Supreme Court has stated repeatedly that an attorney is "not required to pursue a completely useless course when the judge [has] announced in advance that it would be fruitless," Bailey v. State[4] citing Birge v. State[5] and Brown v. State.[6]
Now, on the merits, we are persuaded that this case is governed by O'Neil v. State,[7] Stanley v. State[8] and by the caveat of Judge Sherman Smith in Prather v. State[9], wherein he ordained that: "Law enforcement officers may not make a valid search by entering premises ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for evidence of crime."
The operative facts here are that a few vice squad deputy sheriffs were whiling away the time one evening when a call came to one of them from a confidential informant stating that a man named Hardison could be found that evening at Harding's home. The officers were not particularly looking for Hardison that night but they had had previous experience with his involvment in the local drug scene and, as one of the officers testified, if Hardison were around "it would be a good bet" there would also be drugs. In any case, the informant advised that Hardison had two minor traffic arrest warrants outstanding against him which were issued by the City of St. Petersburg, a fact verified thereafter by the deputy. The deputy did not then advise the city police that Hardison could be found within their jurisdiction at a particular address on that night but instead used the information as the basis of a trip by him and three other deputies to Harding's home where they announced their purpose to be the arrest of Hardison. After the officers had gained entry into the house by this means and arrested Hardison, who was indeed present, Harding, previously absent, walked in through his own back door carrying in plain sight the bag of marijuana which is the subject matter of this proceeding. The officers then arrested Harding.
None of the deputies involved was normally engaged in executing municipal traffic warrants. Moreoever, they testified that it was most unusual, if not unheard of, that deputy sheriffs in Pinellas County ever served a city traffic warrant, and certainly never within the boundaries of the issuing city. In short, the arrest cannot be described as one which would have been accomplished by any Pinellas County deputy sheriff routinely acting in reasonable pursuit of his usual and normal duties, a criterion applied in State v. Holmes.[10]
To summarize: (1) The arrest was made within city limits by state officers executing city warrants for minor traffic violations; (2) the execution of such warrants was outside their normal routine duties; *515 (3) the arrest was directed against one Hardison who the officers knew to have been involved in illicit drug trafficking in the past, but who was not then and there being sought by the officers for any particular reason; (4) the officers sought to arrest Hardison because from their past experience they figured "it was a good bet" that where Hardison was, drugs were; (5) the arrest was made late at night; (6) the arrest was made after gaining entry to the private dwelling of one (innocent for all they knew) other than Hardison merely on the word of an informant that Hardison would be there; and (7) all of the foregoing occurred without any pretense of necessity or without any suggestion of exigent circumstances. In our view, the warrants were used as an excuse to scavenge for contraband and on such a predicate the plain sight seizure from Harding, the owner of the invaded home, was unreasonable, that is to say, fatally pretextual, in violation of his rights under the Federal and State Constitutions relating to unreasonable searches and seizures.[11] The evidence seized should have been suppressed.[12]
On a closing note, and lest our holding herein be otherwise misunderstood, we do not suggest that the arrest herein was illegal in the strictest sense. While it may be said that all illegal arrests are per se unreasonable, it doesn't necessarily follow that all legal arrests are reasonable for purposes of supporting a subsequent search or seizure. We merely say here that, conceding the strict legality of the arrest herein, under the circumstances the seizure from Harding was unreasonable.
Accordingly, the judgment and sentence appealed from should be, and they are hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
MANN, J. (Ret.), concurs.
HOBSON, J., dissents with opinion.
HOBSON, Judge (dissenting):
In addition to the facts set forth in the majority opinion the officers testified that the sole purpose for going to Harding's house was to arrest Hardison on the outstanding warrant.
The lower court as trier of the facts found that at the time of Harding's arrest the officers were executing a valid outstanding warrant for Hardison, and the arrest under the warrant was valid. The officers were lawfully in appellant's home and while there observed the marijuana in clear view in Harding's possession.
Under the plain view doctrine, it has been held that it is not a search to observe, and to seize, what is so placed where it may be seen by an officer who is where he has a legal right to be. State v. Parnell, Fla. 1969, 221 So.2d 129; State v. Ashby, Fla. 1971, 245 So.2d 225; State v. Cash, Fla.App. 1973, 275 So.2d 605; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
I would affirm.
NOTES
[1] (Fla.App.1st, 1967), 205 So.2d 324.
[2] (1942), 151 Fla. 634, 10 So.2d 361.
[3] (1927), 94 Fla. 770, 114 So. 534.
[4] (Fla. 1969), 224 So.2d 296.
[5] (Fla. 1957), 92 So.2d 819.
[6] (Fla. 1968), 206 So.2d 377.
[7] (Fla.App.3d, 1967), 194 So.2d 40.
[8] (Fla.App.1st, 1966), 189 So.2d 898.
[9] (Fla.App.2d, 1966), 182 So.2d 273, 275.
[10] (Fla.App.2d, 1971), 256 So.2d 32.
[11] U.S.Const. amend. IV and Fla. Const. art. 1, § 12.
[12] See, Taglavore v. United States (9th Cir.1961), 291 F.2d 262. Also, cf., State v. Holmes, n. 10 supra.