325 So.2d 83 (1976)
David Glenn PURCELL, Appellant,
v.
STATE of Florida, Appellee.
Nos. Y-402 to Y-404.
District Court of Appeal of Florida, First District.
January 16, 1976.
*84 Scott R. Nabors of Staats & Nabors, Panama City, for appellant.
Robert L. Shevin, Atty. Gen., and Gerry B. Rose, Asst. Atty. Gen., for appellee.
SMITH, Judge.
Convicted and sentenced on three charges of possession of cocaine and hashish, Purcell asserts on appeal that the drugs were seized as a result of a search of his leased storage rooms in violation of Fourth Amendment standards.
The State questions whether the appeal was appropriately begun, suggesting that the filing of the notice of appeal antedated the filing or rendition of the written judgment and sentence. The record before us contains a minute entry of an earlier judgment in the case, to which the notice of appeal properly related. In any event, the question raised by the State has been answered favorably to appellant by the Supreme Court's recent decision in Williams v. State, 324 So.2d 74 (Fla. 1975).
Appellant, whom the authorities knew from investigation had possession of stolen photographic equipment in a black cardboard carrying case and a silver camera case, was arrested on March 14, 1975, with *85 the silver camera case, containing a stolen camera, in his possession. Surmising then that the black case and the rest of the stolen equipment would be found in a two-story storage facility rented by appellant, Detective Evans sought and obtained a magistrate's warrant to search the premises for:
"... certain stolen property to-wit: a black cardboard carrying case containing photographic lights, stands, and other photographic equipment, specifically a Berkey-Colotran Mini Pro Kit (A.C.) which are believed to have been stolen. And a Sylvania Sun Gun Kit, Sun Gun head and power supply."
With appellant jailed, Evans and Investigator Parker cut the lock from the door of the large storage facility and entered. They searched the ground floor quickly and unsuccessfully and turned their attention to the attic. There, from the top of the stairs, they saw the black case described in the warrant on the far side of the room. A set of sensitive drug scales sat in plain view on top of a desk at the head of the stairs and a sawed-off shotgun was likewise clearly visible. The officers did not immediately seize the black case, which predictably contained the photographic equipment described in the warrant, but launched a thorough search of the entire upstairs, working systematically, as they described it, from the point of entrance to the rear of the room where the black bag sat. The entire cache included plastic containers of cocaine and hashish, assorted drug paraphernalia and other drug-related evidence, all of which was found in the desk drawers, several guns whose serial numbers demonstrated that they had been stolen, the sawed-off shotgun, the drug scales and, at last, the black carrying case and its contents.
During the attic search, Evans and Parker encountered a locked blue trunk. Having already found the black case and equipment specified in the search warrant, they decided not to open the trunk but to seek another search warrant. Parker's affidavit supporting the application for that warrant on March 20 recited as grounds the fruits of the prior day's search and affiant's belief that the storage premises, "including a large footlocker located in the attic section of the storage locker,"
"... are being used to violate the laws of the State of Florida, specifically the possession of narcotics or dangerous drugs and/or any other illegal contraband."
The Fourth Amendment to the Constitution, made applicable to the States by the Fourteenth, proscribes unreasonable searches and seizures and forbids that warrants issue without "particularly describing the place to be searched, and the ... things to be seized." "General searches," reminiscent of those conducted under the despised writs of assistance in pre-Revolutionary days, "have long been deemed to violate fundamental rights. It is plain that the amendment forbids them." Marron v. United States, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231, 236 (1927). While subsequent decisions make clear that the searcher, having an adequate warrant, need not disregard evidence of crime or contraband appearing "in plain sight" in the execution of the warrant, Harris v. United States, 331 U.S. 145, 186, 67 S.Ct. 1098, 91 L.Ed. 1399, 1425 (1947), the searcher and the search are otherwise confined to the objects specified in the magistrate's warrant:
"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron, supra, 275 U.S. at 196, 48 S.Ct. at 76, 72 L.Ed. at 237.
*86 So it is in this case that Detective Evans and Investigator Parker, standing at the top of the stairs and seeing across the attic what they correctly took to be the black carrying case in which the stolen photographic equipment was contained, all as described in the magistrate's warrant, had a duty on the 19th to seize the case and inventory its contents and to report the results as the warrant required. They of course were authorized, as well, to seize, as in plain sight, the drug scales and the sawed-off shotgun. But the systematic search of the attic, the opening and rummaging of the desk drawers and the confiscation of their contents simply was not authorized by the Constitution or by the warrant which, pursuant to § 933.07, F.S. 1973, specified the property sought and commanded the officers "to search diligently for said stolen property described in this warrant; ... to seize and secure the same, and to make return of your doings... ." Alford v. State, 307 So.2d 433, 439 (Fla. 1975).
The search conducted on the 20th, pursuant to the second warrant obtained that day by Parker, was in all respects but one a repeat of the prior day's search. The only variation was the opening and search of the locked blue metal trunk, which was found to contain a number of weapons. More incriminating material was mined from the desk, including an altered twenty dollar bill, a Columbian license plate, appellant's passport, an "anarchist cookbook," a "Mafia Contramafia" newsletter and a green envelope which was shown, by search under yet another warrant, to contain cocaine.
If it were necessary to pass on the validity of the second warrant as though it were not based almost entirely on the fruits of the general search conducted pursuant to the first, we would question whether it sufficiently described the objects for which the magistrate intended to dispatch the searchers. The only hints the searchers had from the face of the warrant were oblique references to unidentified "illegal contraband described in this warrant" and to "laws of the State of Florida" proscribing "possession of narcotics or dangerous drugs and/or any other illegal contraband." We need not suppress the fruits of the second and third searches on that ground, however, for all of it was the fruit of the illegal first general search on the 19th.
Reversed.
MILLS, J., concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting.)
I respectfully dissent.
As recited in the majority opinion, when the investigators reached the top of the stairs they saw the black case described in the search warrant and simultaneously observed in plain view a set of sensitive drug scales and a sawed-off shotgun. In my view those findings were such as to have required prudent and competent investigators to have searched further. They did. Had they failed to do so they would have been rightfully subject to criticism for dereliction of duty. In my view no constitutional rights have been infringed upon this case. The able police officers should be complemented for their careful and thorough search which was initiated by a valid search warrant. I would affirm.