537 So.2d 662 (1989)
George FRAZIER, Appellant,
v.
The STATE of Florida, Appellee.
No. 86-3186.
District Court of Appeal of Florida, Third District.
January 17, 1989.
Bennett H. Brummer, Public Defender, and Sy Gaer and John H. Lipinski, Sp. Asst. Public Defenders, for appellant.
*663 Robert A. Butterworth, Atty. Gen., and Joni B. Braunstein, Asst. Atty. Gen., for appellee.
Before BARKDULL, DANIEL S. PEARSON and FERGUSON, JJ.
PER CURIAM.
George Frazier was convicted of first-degree murder and related offenses arising out of an armed home invasion which resulted in the death of one of the occupants. His only point on appeal which merits discussion is that his convictions were obtained through the admission, over his objection, of a highly incriminating cloth ski mask which, he contended, had been illegally seized from his apartment. We affirm upon a holding that the evidence was lawfully seized and properly admitted.
The search of the defendant's apartment and seizure of the evidence was pursuant to a search warrant. The following are the facts leading up to the procurement of the warrant.
Michael Fisten, a homicide detective, believing that Frazier was involved in a home invasion robbery-killing and anxious to search Frazier's apartment for physical evidence linking Frazier to the crime, called Richard Fandry, a narcotics detective. Fisten, convinced that he did not know of facts sufficient to justify the issuance of a warrant to search Frazier's apartment,[1] told Fandry of his situation. He did not tell Fandry to get a warrant for Frazier's apartment, but did say that if Fandry got one, he would like to come along when it was executed.
Fandry was aware of the comings and goings at Frazier's apartment, having received many complaints that drug sales were occurring there. He was not, however, in the process of seeking a warrant to search the apartment when his colleague from homicide called. However, two or three days after Fisten expressed interest in Apartment 133, Fandry sent a confidential informant to make a controlled buy in the apartment. This controlled buy established the necessary probable cause to search the apartment for narcotics, and Fandry obtained a search warrant.[2] Notwithstanding that he had already decided that Fisten would accompany him when the search took place, Fandry said nothing to the issuing judge about Fisten's interest or role in the matter.
Fisten did, of course, go with Fandry to search Frazier's apartment. During the search, in which cocaine as well as the ski masks were found, Fisten played an active role in seeking out and confiscating the evidence used to establish Frazier's complicity in the homicide.
The defendant contends that the search was invalid because Fisten "used a narcotics search warrant to accomplish by subterfuge what he could not have done otherwise." He makes no other attack upon the warrant.
What support there is for the defendant's contention is found in a body of search and seizure law that has been outdated for some ten years and, although quite possibly meriting our attention as historical fact, no longer merits our attention as precedent. To be sure, cases such as United States v. Sanchez, 509 F.2d 886 *664 (6th Cir.1975), United States v. Tranquillo, 330 F. Supp. 871 (M.D.Fla. 1971), and State v. Watkins, 89 S.D. 661, 237 N.W.2d 14 (1975), condemn activity like that engaged in by Fisten in the present case and order the suppression of evidence obtained by piggybacking law enforcement agents. For example, in Sanchez, it was held that a valid warrant authorizing federal narcotics agents to search for narcotics "could not be used to validate the entrance of a federal officer [of the Alcohol, Tobacco and Firearms Bureau] having both probable cause and the opportunity to obtain a separate warrant to search for different items of property." 509 F.2d at 889.[3] In Tranquillo, a warrant authorizing a search of the defendant's home for items of stolen clothing was held not to authorize narcotics agents, invited to come along, to search for and seize narcotics during the course of the authorized search. Similarly, in Watkins, a search for items stolen in burglaries was held not to support a search for drugs by accompanying narcotics agents.
These cases essentially announce a rule that items which are not the objects of a search warrant should be suppressed as being obtained in violation of the fourth amendment where, although the police enter a home pursuant to a valid search warrant, some of their number are admittedly far more interested in searching for and seizing items not listed on the warrant. The announced basis of the rule is that the otherwise valid warrant was obtained in bad faith or as a subterfuge for a search for different items.[4]
However, contrary to the defendant's contention, cases such as Sanchez, Tranquillo, and Watkins can no longer be considered as reliable authority in light of the United States Supreme Court's declaration in Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), that searches and seizures are to be examined under a standard of objective reasonableness without regard to the good faith or bad faith, or the underlying intent or motivation of the officers involved. See Wensman v. State, 342 N.W.2d 150 (Minn. 1984); 2 W. LaFave, Search & Seizure § 6.7(d), at 731 (2d ed. 1985). And, as might be expected, various courts have upheld piggyback searches since Scott. United States v. Kimberlin, 805 F.2d 210 (7th Cir.1986) (upholding piggyback search); United States v. Washington, 797 F.2d 1461 (9th Cir.1986); United States v. Johnson, 707 F.2d 317 (8th Cir.1983). See also United States v. Causey, 834 F.2d 1179 (5th Cir.1987) (en banc) (confession to robbery not invalidated where defendant questioned after valid arrest for minor offense of failure to appear, where officer's motive for effectuating arrest was to question defendant concerning robbery), on remand to panel, 835 F.2d 1527 (5th Cir.1988); State v. Irvin, 483 So.2d 461 (Fla. 5th DCA 1986) (valid traffic arrest validates ensuing vehicle search notwithstanding officer's desire to detain defendant for another reason). Therefore, because Article I, Section 12 of the Florida *665 Constitution requires that we follow Scott, and because Scott makes irrelevant that Fisten intended to search for evidence of the murder and robbery while his colleague searched for narcotics, the search and seizure was entirely lawful. Accordingly, the convictions under review are
AFFIRMED.
NOTES
[1] Fisten had been told that the perpetrators of the home invasion wore dark clothing, dark gloves, ski masks, and had guns; that Frazier lived in and sold cocaine from Apartment 133 at 2575 Northwest 207th Street; and that, based on two identifications of Frazier's voice, Frazier was one of the individuals involved in the murder.
[2] The search warrant authorized a search for narcotics:

"The Premises being in Dade County, Florida, hereinafter referred to as `The Premises', the laws of the State of Florida related to narcotics or drug abuse are being violated therein, to wit: Possession of a Controlled Substance, 893.13, Florida Statutes, as evinced by a quantity of controlled substance, to wit: cocaine and currency, titled, receipts and other documents and records evidencing illegal activity hereinafter referred to as `The Property'. And as I am satisfied that there is probable cause to believe that `The Premises' are being used as aforesaid and that `The Property' above mentioned is being concealed and stored at `The Premises' above described, I expressly find probable cause for the issuance of this Search Warrant."
[3] In United States v. Hare, 589 F.2d 1291 (6th Cir.1979), the court distinguished Sanchez and upheld a piggyback search where the piggybacking Drug Enforcement agents lacked probable cause to search for narcotics. Because in Sanchez the piggybacking ATF agents had probable cause to get their own warrant to search for explosives, it could not there be said that their discovery of explosives during the search for narcotics was inadvertent.
[4] Cases such as Purcell v. State, 325 So.2d 83 (Fla. 1st DCA 1976); Harding v. State, 301 So.2d 513 (Fla. 2d DCA 1974); and Stanley v. State, 189 So.2d 898 (Fla. 1st DCA 1966), are entirely inapposite, involving, as they do, scenarios very different than the present case.

The activity condemned in Purcell was that the officers continued to search the premises after having found precisely what the search warrant authorized them to look for and seize. The fruits of this continuing search were properly suppressed as deriving from an unconstitutional general search.
The activity condemned in Stanley and Harding was the use of an arrest warrant to gain entrance into the defendant's home for the primary purpose of searching it. The courts in Stanley and Harding quite correctly foresaw the United States Supreme Court's decision in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Thus, these decisions remain as good law despite the amendment of Article I, Section 12, of the Florida Constitution. Stanley, Harding, and Payton, unlike the present case, are cases in which the authority of the police to enter the premises is to arrest, not search.