548 So.2d 846 (1989)
The STATE of Florida, Appellant,
v.
Mark WEBER, Appellee.
No. 88-2879.
District Court of Appeal of Florida, Third District.
September 12, 1989.
Robert A. Butterworth, Atty. Gen., and Joni Braunstein, Asst. Atty. Gen., for appellant.
Robert Lamons, Jr., Miami, for appellee.
Before COPE, LEVY and GERSTEN, JJ.
COPE, Judge.
This is an appeal by the State of an order suppressing part of the evidence seized in a search of a residence pursuant to a search warrant. As we conclude the evidence should not have been suppressed, we reverse.
A police narcotics officer observed what he believed to be a drug transaction, after which he followed one of the participants to defendant's house. The participant, Namur, exited his car carrying a shopping bag. When the officer approached and identified himself as a police officer, Namur dropped the bag, produced his driver's license on request, and stated that he knew the person, "Mark," who lived in the house. Namur then bolted through the defendant's front door shouting, "Mark, Mark, the police." *847 The police officer found two kilos of cocaine inside the shopping bag but waited in the front yard for a backup officer to arrive before attempting to enter the house. During that interval, Namur fled.[1]
As the second officer arrived, the defendant, Mark Weber, hurriedly exited the house and was detained. He waived his Miranda rights,[2] admitted he knew Namur, and in response to a question about contraband in the house, stated there was one-half ounce of marijuana and some currency. Appellee refused consent to search his home. The backup officer remained on the premises with appellee while a search warrant was obtained.
The search warrant authorized a search of the residential premises and curtilage for "marijuana ... as evinced [sic] by a quantity of controlled substance and/or currency, titles, receipts, and any other documentation relating to the unlawful possession of controlled substances and/or evidence that would lead to the identification of persons responsible for unlawful possession of controlled substances... ."
On return to the residence the officers read the warrant to defendant and asked him to assist in locating the marijuana. They were led to defendant's bedroom, where they found relatively small quantities of marijuana, hashish, and Xanax, as well as a scale and $2,452 in currency.[3] Other rooms yielded over $25,000 in additional currency and two kilos of cocaine. The defendant was charged with trafficking in cocaine and possession of cannabis.
Defendant moved to suppress the evidence seized in the search. The trial court ruled that the police had the right to initially detain defendant and that there was probable cause to support the issuance of the search warrant. Those findings are not challenged here. The trial court concluded, however, that the search warrant had been founded upon defendant's admissions regarding the half ounce of marijuana and the currency. That being so, the trial court reasoned that the police had found the object of their search when they discovered marijuana in the defendant's bedroom. The trial court held that the search should have ceased after the discovery of the marijuana in that location, and suppressed all evidence other than the marijuana.
The trial court erred in granting the motion to suppress. This case is controlled by the general rule that police officers are authorized to search throughout the specified premises for the items described in the warrant, so long as the areas and containers searched are ones in which the described items might reasonably be found. United States v. Ross, 456 U.S. 798, 820-21, 102 S.Ct. 2157, 2170-71, 72 L.Ed.2d 572, 591 (1982); Alford v. State, 307 So.2d 433, 439 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); 2 W. LaFave, Search and Seizure § 4.10(a), (d) (2d ed. 1987). Other contraband found in plain view or discovered in the course of the search may properly be seized. Alford v. State, 307 So.2d at 439; Hess v. State, 309 So.2d 606, 607 (Fla. 2d DCA 1975); Partin v. State, 277 So.2d 847, 848 (Fla. 3d DCA), cert. denied, 283 So.2d 563 (Fla. 1973); Ludwig v. State, 215 So.2d 898, 900 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 536 (Fla. 1969), cert. denied, 396 U.S. 927, 90 S.Ct. 261, 24 L.Ed.2d 225 (1969); see 2 W. LaFave, Search and Seizure § 4.10(d).
The trial court relied on cases holding that, where the warrant describes only a specific object, and it is found, any evidence discovered in a continuation of the search of the premises must be suppressed. See 2 W. LaFave, Search and Seizure § 4.10(d) at 329-30. In Purcell v. State, 325 So.2d 83 (Fla. 1st DCA 1976), a warrant was issued to search for specifically described photographic equipment. After the equipment was discovered in the attic, the officers continued the search and turned up additional contraband not otherwise in *848 plain view. The court concluded that the officers had acted illegally by continuing the search. See generally Frazier v. State, 537 So.2d 662, 664 n. 4 (Fla. 3d DCA 1989) (distinguishing Purcell from "piggyback search" permitted by Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). Similar cases relied on by defendant involved a warrant for a search for a body, Phelps v. State, 598 P.2d 254 (Okla. 1979), four designated pieces of stolen furniture, State v. Phillips, 366 A.2d 1203 (Del. 1976), and a particular package, United States v. Highfill, 334 F. Supp. 700 (E.D.Ark. 1971).
Defendant's cases are inapposite. A distinction is drawn between specified property and property of a specified character.
"[W]here the purpose of the search is to find specific property, it should be so particularly described as to preclude the possibility of seizing any other. On the other hand, if the purpose be to seize, not specified property, but any property of a specified character, which, by reason of its character and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place, and circumstances, would be unnecessary and, ordinarily, impossible; as, for instance, where a search is ordered for dies for the counterfeiting of money, or for opium, or gambling devices, or lottery tickets, or intoxicating liquors, alleged to be held in possession unlawfully, and the same is true though the illegality may consist in the intended use rather than the mere possession of the property."
Carlton v. State, 449 So.2d 250, 252 (Fla. 1984), (quoting North v. State, 159 Fla. 854, 857, 32 So.2d 915, 917 (1947)).
Here the warrant authorized a search for property of a specified character: marijuana, currency and the other items described above. The officers were authorized to search throughout the described premises in locations in which the items described in the warrant might reasonably be found. As this was not a consent search, they were not obliged to confine the search to the first bedroom, nor were they required to believe defendant's representations as to the amount and location of contraband.
Even if we were to accept the premise that the search for marijuana could not extend beyond the initial discovery of marijuana (and we reject that limitation), the warrant also expressly authorized a search for currency, which was found elsewhere within the residence, as was the cocaine. Under the trial court's own approach, the motion should also have been denied.[4]
The order under review is therefore reversed insofar as it suppresses any of the items seized pursuant to the execution of the search warrant.
NOTES
[1] Namur was later apprehended and charged.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The quantity of marijuana exceeded the misdemeanor amount admitted by the defendant.
[4] That the officers may have hoped to find cocaine is not dispositive. See Scott v. United States, 436 U.S. 128, 135-38, 98 S.Ct. 1717, 1722-24, 56 L.Ed.2d 168, 176-78 (1978); Frazier v. State, 537 So.2d 662, 664 (Fla. 3d DCA 1989) (standard of objective reasonableness).