ALTENBERND, Judge.
The State appeals the trial court’s order granting Bernie Ridgway’s motion to suppress evidence. We affirm the suppression of certain videotapes without discussion. We reverse the suppression of photographs found during the course of a legal search.
In January 1996, the Pasco County Sheriffs Department received information from a *319 reliable source that Mr. Ridgway was selling methamphetamine from his mobile home and that he had engaged in sexual misconduct with a 15-year-old girl. The misconduct was allegedly documented in Polaroid photographs. Detectives monitored several controlled purchases of methamphetamine from Mr. Ridgway’s home and developed .evidence that he had a significant quantity of the illegal drug in the home. Based’ on this evidence, the detectives obtained a warrant to search Mr. Ridgway’s home for drugs, paraphernalia, and serialized money used in the controlled drug buys. The officers did not obtain a warrant to search for photographic proof of the sexual misconduct. However, an officer from the Crimes Against Children Unit was present outside Mr. Ridg-way’s residence when the warrant was executed.
When the detectives arrived at Mr. Ridg-way’s mobile home, they advised him of the search warrant and read him his Miranda[1] rights. Mr. Ridgway told the detectives a, search was not necessary and led them to a quantity of methamphetamine in his refrigerator. Based on the controlled buys conducted in the residence, the detectives believed there was more methamphetamine, paraphernalia, and serialized money in other parts of the home. They continued the search and discovered a cooler in the master bedroom closet. Because drugs are often stored in coolers, the detectives opened this container and discovered several small baggies with trace amounts of methamphetamine. In the same container, the detectives found photo albums with Polaroid photographs of what appeared to be nude teenage girls. It was later determined that some of the photographs documented the reported sexual misconduct of Mr. Ridgway with the teenage girl. The detectives also found two other sets of photographs in the master bedroom during the search for drugs. As a result, the State charged Mr. Ridgway[2] with three counts of lewd and lascivious conduct involving a child under the age of sixteen,[3] and two counts of possession of photographs of a child sexual performance.[4]
The trial court found that the warrant was a pretext for a search for child pornography, that the scope of the search exceeded the warrant, and that the duration of the search was extended to search for the nude photographs. The court granted Mr. Ridgway’s motion ordering the suppression of the photographs and videotapes. The State appealed.
There is no question that the detectives entered Mr. Ridgway’s home under the lawful authority of a valid search warrant. The fact that the detectives suspected that Mr. Ridgway had committed crimes in addition to the drug offenses did not invalidate their warrant or their right to conduct a complete search for drugs. See Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); Frazier v. State, 537 So.2d 662, 664 (Fla. 3d DCA 1989). Police officers are, allowed to search the entire premises specified in a warrant if the areas and containers searched might reasonably hold the object of the search. See State v. Weber, 548 So.2d 846, 847 (Fla. 3d DCA 1989).
Mr. Ridgway’s cooperation at the inception of the search did not bar the detectives from properly executing their search. Id. If this were not the case, a drug dealer could keep a small portion of his supply in a separate location and lead police there during a search, protecting his primary supply from seizure. Thus, the detectives were allowed to continue searching for more drugs, paraphernalia, and serialized money after Mr. Ridgway showed the officers the methamphetamine located in the refrigerator. The scope and duration of the search had not exceeded that permitted by the warrant at the point when the photographs were located.
Contraband not listed in a search warrant may be seized if found in accordance *320 with the “plain view” doctrine during the course of the search. Id. It must be readily apparent that the items are contraband. See State v. Waterman, 638 So.2d 1032, 1038 (Fla. 2d DCA 1994). It is no longer necessary that the discovery of the unlisted evidence be inadvertent. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In this ease, the officers were justified in opening the photo albums to search for additional drugs, paraphernalia, or written evidence of drug transactions. As soon as the albums were open, at a minimum, it was readily apparent that the photographs could be seized as evidence of Mr. Ridgway’s lewd and lascivious conduct with a child.[5] The remaining photographs were also lawfully found during the search. Accordingly, the trial court erred in granting this motion to suppress the photographs.
Affirmed in part, reversed in part, and remanded.
FULMER and SALCINES, JJ., concur.

. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Apparently, the State filed charges of trafficking in methamphetamine in a separate information not involved in this appeal.

. See § 800.04(1), Fla. Stat. (1995).

. See § 827.071(5), Fla. Stat. (1995).

. In light of the First Amendment, the case law tends to establish a more restrictive plain view doctrine for searches discovering obscene publications. See United States v. Hale, 784 F.2d 1465 (9th Cir.1986) (suppressing seizure of obscene magazine not listed in search warrant). The photographs in the cooler were seized as evidence of Mr. Ridgway’s alleged illegal conduct with a young girl. These photographs were not seized as obscene literature. See Ch. 847, Fla. Stat. (1995). Their seizure is not entitled to review under any heightened scrutiny. Moreover, Mr. Ridgway's motion to suppress was not based on a First Amendment analysis.