STATE of Missouri, Plaintiff–
Respondent,

v.

Douglas D. FRANKLIN, Defendant–
Appellant.

No. 25905.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 2004.

Cristy R. Meadows, Asst. Public Defender, Springfield, MO, for Appellant.

Rodney E. Daniels, Taney County Prosecuting Atty., Sherri L. Harris, Asst. Pros-

ecuting Atty., Forsyth, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Douglas Franklin ("Defendant") was convicted by a jury of committing the class A misdemeanor of possessing child pornography, in violation of § 573.037, and sentenced to serve one year in the county jail.[1] On appeal, Defendant argues his conviction should be reversed because: (1) the trial court erred in admitting the videotape containing child pornography, which was found in Defendant's home by police while executing a search warrant; and (2) the trial court erred in overruling Defendant's motion to quash the entire venire because seven of the venirepersons had been exposed to a prejudicial comment during a prior, unsuccessful attempt to select a jury in Defendant's case. We affirm.

Since Defendant does not challenge the sufficiency of the evidence to support his conviction, it can be succinctly summarized. Deputies from the Taney County Sheriff's Department came to Defendant's home on October 19, 2001, to execute a search warrant because Defendant was suspected of making and selling methamphetamine ("meth"). During the search, the deputies found numerous items used to make meth. The house also contained hundreds of videotapes. While searching a television room in Defendant's home, deputies found 25–30 unmarked videotapes. They were aware that persons who illegally make meth frequently videotape themselves "cooking" the drug and then sell the videos to show others how to do so. The deputies began viewing these tapes to see if any of them contained videotaped

"cooking" instructions. During this process, the deputies discovered one tape which contained images of a small child having oral and anal intercourse with an adult male.

Section 573.037.1 states that "[a] person commits the crime of possession of child pornography if, knowing of its content and character, such person possesses any obscene material that has a child as one of its participants or portrays what appears to be a child as an observer or participant of sexual conduct." At trial, Defendant stipulated that: (1) Defendant possessed the videotape; (2) the videotape portrayed what appeared to be a person under the age of 18 as a participant in sexual conduct; and (3) the videotape was obscene. The only disputed issue was whether Defendant knew the character and content of the material on the videotape. The jury decided that issue against Defendant and found him guilty of possessing child pornography. Additional facts necessary to the disposition of the case are included below as we address Defendant's two points on appeal.

*Admission of the Videotape*

Defendant's first point concerns the admission of the videotape containing child pornography into evidence. Prior to trial, Defendant filed a motion to suppress the videotape. The motion asserted, *inter alia*, that the videotape was unconstitutionally seized because it was not described in the warrant, and it did not come within the "plain view" exception to the warrant requirement.[2]

At the suppression hearing, Taney County Deputy David Freeman ("Freeman") testified he had received informa-

---

1. All references to statutes are to RSMo (2000).

2. Defendant alleged that the seizure of the videotape violated his rights under the Fourth Amendment of the U.S. Constitution and art. I, § 15, of the Missouri Constitution (1945).

tion from a task force officer that Defendant was making and selling meth at his home. Freeman went to Defendant's home to investigate. Once there, Freeman smelled the overwhelming odor of chemicals indicating a meth lab was present. He received permission from Defendant to enter the house. Inside, Freeman observed glassware, a can of acetone and a red substance believed to be iodine that, in the deputy's experience, were often used to make meth. Defendant was arrested, and Freeman obtained a warrant to search Defendant's home. The warrant authorized the seizure of "[c]hemicals, precursors, methamphetamine, paraphernalia, scales, substances and equipment used in the production of illegal drugs, any illegal drugs, computers, written records or documents used in the manufacture or distribution of illegal drugs[.]" Upon Freeman's return to the home with other deputies, they began searching for evidence. As noted above, there were hundreds of videotapes in the house. When executing search warrants during past investigations of meth labs, Freeman had found videotapes that contained recipes or instructions on how to make meth. He testified that "some of the major distributors or cooks in the past that we have arrested have videoed theirselves [sic] and videoed other people cooking meth, been known to sell those tapes or distribute them amongst their friends so they could use them to learn how to cook meth." Freeman and Deputy Luttrell found 25–30 unmarked tapes in Defendant's television room. They began placing them in a VCR and viewing them to see whether the tapes contained any videotaped instructions or recipes on how to make meth. While reviewing one of the videotapes, Freeman saw that it contained images of a small child having sex with a male. This videotape was seized and resulted in Defendant

being charged with possession of child pornography.

Defendant argued to the trial court that the videotape should be suppressed because the warrant did not specify videotapes could be seized. The judge noted that, "if a search warrant allows you to search an area and while you're there you come upon the evidence to show some heinous crime.... I don't think the constitution protects a person from having that type of evidence." The court also stated that the videotape constituted "paraphernalia," which was specified in the warrant. The motion to suppress was overruled.

▄▄▄ In Defendant's first point on appeal, he contends the trial court erred in admitting the videotape in evidence because this item was illegally seized from Defendant's home. Defendant claims the videotape was not within the scope of the warrant. The State argues that this point is not properly preserved for review and may only be reviewed for plain error. We agree. When the State offered the videotape in evidence, defense counsel stated that she had "no objection" to its admission. As the Eastern District of this Court recently stated:

> Generally, a trial court's ruling on a pretrial motion to suppress cannot be asserted as a claim of error on appeal because the pretrial motion to suppress and the admission of the challenged evidence at trial are two separate procedures. *State v. Williams,* 9 S.W.3d 3, 11 (Mo.App.1999). "Absent an objection at trial to the admission of the evidence challenged in the motion, the issue is not preserved for appellate review." *Id.* In the present case, counsel for Coyne filed a motion to suppress any evidence resulting from the search of his vehicle. However, counsel failed to object at trial to the introduction of such evidence on

the grounds that such evidence was the product of an illegal search and seizure. Therefore, we review the admission of the challenged evidence at trial for plain error. *State v. Coyne,* 112 S.W.3d 439, 442–43 (Mo.App.2003). Since Defendant did not object to the admission of the videotape when it was offered at trial, we follow the same approach here and review only for plain error.

In order to be entitled to relief under the plain error rule, "[a] defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *State v. Deckard,* 18 S.W.3d 495, 497 (Mo. App.2000). The burden of proving the existence of such a manifest injustice or miscarriage of justice rests on defendant. *See State v. Cole,* 844 S.W.2d 493, 500 (Mo. App.1992). A request for plain error review requires us to go through a two-step analysis. *State v. Stanley,* 124 S.W.3d 70, 77 (Mo.App.2004). We first determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If facially substantial grounds are found to exist, we then determine whether a manifest injustice or a miscarriage of justice has actually occurred. *Id.* For the reasons set forth below, we conclude Defendant's claim of error fails to facially establish substantial grounds for believing a manifest injustice or miscarriage of justice has occurred because the videotape was in "plain view" when it was properly seized by deputies.

The "plain view" doctrine is one of the recognized exceptions to the warrant requirement imposed by the Fourth Amendment to the United States Constitu-

tion. *See State v. Rutter,* 93 S.W.3d 714, 724 (Mo. banc 2002); *State v. Courtney,* 102 S.W.3d 81, 87 (Mo.App.2003); *State v. Gantt,* 87 S.W.3d 330, 333 (Mo.App.2002). This doctrine applies when: (1) the officer is lawfully located in a place from which the object can be plainly seen; (2) the officer has a lawful right of access to the object itself; and (3) the incriminating character of the object is immediately apparent to the seizing officer. *State v. Miller,* 894 S.W.2d 649, 656 (Mo. banc 1995); *see Gantt,* 87 S.W.3d at 333; *see also Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). We find that each element necessary to apply the "plain view" doctrine was present here.

First, the deputies lawfully entered Defendant's home pursuant to a warrant. The deputies entered the television room while executing the search warrant. Once deputies entered this room, the videotape was located in plain sight. It was lying right on top of a box containing 25–30 other unmarked videotapes.

Second, the deputies had a lawful right to view the videotape once it was found in plain sight. One of the specific items the warrant authorized the officers to seize was "paraphernalia." Section 195.010(17) defines "[d]rug paraphernalia" as:

all equipment, products, substances and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance or an imitation controlled substance in violation of sections 195.005 to 195.425.

At the suppression hearing, Freeman testified that he viewed the videotape in order to determine whether it contained instructions on how to "cook" meth. He had frequently found such videotaped "cooking" instructions when investigating other meth labs.

Third, the incriminating character of the videotape was immediately apparent to the seizing deputies. The tape contained images of a small child having oral and anal intercourse with an adult male. As soon as the deputies saw what the videotape contained, they seized it and contacted an investigator to report what they had found.

We hold that the videotape was properly seized by deputies pursuant to the "plain view" doctrine. We find support for our conclusion in *State v. Ridgway*, 718 So.2d 318 (Fla.App.1998). There, the police had probable cause to believe Ridgway was selling meth from his mobile home. Officers entered Ridgway's home pursuant to a warrant that authorized them to search for drugs, paraphernalia and serialized money used in drug buys. While searching the mobile home, officers found a cooler in Ridgway's master bedroom closet. They searched the cooler because drugs are often stored in such containers. Inside the cooler, officers found trace amounts of meth and a photo album containing photographs of Ridgway engaging in sexual activity with a teenage girl. Other similar photographs were found in the bedroom while officers were looking for drugs.

After Ridgway was charged with possession of photographs depicting a child engaged in sexual performance, he moved to suppress the photographs. After the trial court granted the motion, the state appealed. The Florida Court of Appeals reversed the trial court's ruling:

> Contraband not listed in a search warrant may be seized if found in accordance with the "plain view" doctrine during the course of the search. It must be readily apparent that the items are contraband. It is no longer necessary that the discovery of the unlisted evidence be inadvertent. In this case, the officers were justified in opening the photo albums to search for additional drugs, paraphernalia, or written evidence of drug transactions. As soon as the albums were open, at a minimum, it was readily apparent that the photographs could be seized as evidence of Mr. Ridgway's lewd and lascivious conduct with a child. The remaining photographs were also lawfully found during the search. Accordingly, the trial court erred in granting this motion to suppress the photographs.

*Id.* at 319–20 (citations and footnote omitted).

We find the analysis in *Ridgway* persuasive and follow it here. Therefore, the trial court committed no error, plain or otherwise, in admitting the videotape containing images of child pornography as evidence at Defendant's trial. Point I is denied.

### Challenge to the Venire

Defendant's second point concerns his complaint that the trial court erred in overruling Defendant's motion to quash the entire venire prior to the start of *voir dire*. The docket sheets indicate that Defendant was first scheduled to be tried for possessing child pornography on July 21, 2003. We have not been furnished with a transcript of what occurred at this first trial. For reasons unknown, this trial appears to have ended in a mistrial after *voir dire* concluded.

Defendant's second trial for this offense started on September 8, 2003. Just before the beginning of *voir dire*, defense counsel moved to quash the entire panel because

11 persons who participated in the *voir dire* at the first trial were included in the current venire, and four of them previously had been struck for cause. Defense counsel also alleged one of these four had stated at the first *voir dire* that "Anybody dealing with child pornography should be hung—shot." [3] The basis of Defendant's objection was that the current trial could not continue if all 11 of these people ended up being struck for cause. The trial court denied the request, noting that sufficient venirepersons would remain to select a jury. Defense counsel then asked that the four persons previously struck for cause not be permitted to participate in *voir dire*. The trial court granted this request. These four persons were identified on the record and dismissed as soon as they entered the courtroom. Thereafter, the remaining venirepersons underwent *voir dire* examination by attorneys for the state and Defendant. After strikes for cause and peremptory strikes were made, 12 jurors were seated to hear Defendant's case.

Defendant complains on appeal that the trial court erred in denying the motion to quash the venire because seven of the venirepersons had been exposed to a prejudicial comment during the prior, unsuccessful attempt to select a jury at Defendant's first trial. We find this argument unpersuasive for two reasons.

▮▮▮▮ First, "[i]t is fundamental that on appeal the trial court's action is presumed to be correct, and the burden is on the appellant to establish that the action was erroneous." *State v. Cella,* 32 S.W.3d 114, 117 (Mo. banc 2000). The 41 persons summoned as venirepersons for Defendant's second trial were identified on the record. That number was reduced to 37 when the four persons who had been struck for cause at the first trial were identified and dismissed. There is nothing in the record, however, that discloses the identities of the seven persons who participated in *voir dire* at the first trial. Unless one of these seven venirepersons actually served on the jury that convicted Defendant, his challenge to their qualifications is "statutorily precluded." *See State v. Cole,* 71 S.W.3d 163, 174 (Mo. banc 2002); § 494.480.4.[4] Since Defendant has failed to establish that any of these individuals served on his jury, he is not entitled to appellate relief. *See State v. Bishop,* 942 S.W.2d 945, 947 (Mo.App.1997).

▮▮▮▮ Second, the only complaint leveled against these unidentified persons is that they allegedly overheard a prejudicial remark during the first *voir dire*. A trial court has broad discretion in deciding whether a jury panel should be dismissed, and the court's ruling will not be disturbed unless there is a clear abuse of discretion. *State v. Thompson,* 985 S.W.2d 779, 789 (Mo. banc 1999). Usually, disqualification of an individual juror for bias or expression of an opinion is insufficient for challenging the entire array. *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). To demonstrate the necessity of striking the entire panel because of improper comments, a defendant must demonstrate that the comments were so inflammatory and

---

3. In referring to this remark as "alleged," we do not mean to impugn either the integrity or recollection of Defendant's counsel. We do so because no transcript containing such a statement has been furnished to this Court as part of the record on appeal.

4. This subsection of the statute states that "[t]he qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant."

prejudicial that his or her right to a fair trial has been infringed. *Thompson,* 985 S.W.2d at 789. We do not find that to be the case here. At Defendant's request, the trial court struck 11 venirepersons for cause. Defendant also was granted six peremptory strikes. Defendant has failed to show that any of the remaining venirepersons expressed any opinions suggesting either a bias against Defendant or an inability to base their decision solely on the evidence presented at trial. The trial court did not abuse its broad discretion in denying Defendant's motion to quash the entire venire, based on one allegedly prejudicial comment made at a different trial. *See Evans,* 802 S.W.2d at 514–15. Point II is denied.

We find no merit in either of the contentions advanced by Defendant as a ground for reversing his conviction. Accordingly, the judgment and sentence of the trial court is affirmed.

PARRISH, P.J., and SHRUM, J., concur.