CORTIÑAS, J.
 

 Appellant, the State of Florida, seeks review of the trial court’s order granting Alvaro Arango’s (“defendant”) motion to dismiss and the court’s earlier grant of defendant’s motion to suppress. We find the trial court erred and, accordingly, reverse.
 

 
 *1253
 
 Detective Vila (“Vila”) received an anonymous tip advising him that marijuana was being cultivated at a particular residence. Upon arriving at the residence, Vila detected the odor of marijuana, determined it was emanating from the residence, and returned to his car to prepare a search warrant for the residence. As Vila was writing out the warrant, the defendant drove onto the residence’s driveway and the garage door opened. The defendant then casually entered the garage and shortly thereafter, saw Vila, and with a look of surprise, returned to his vehicle and drove away. The garage door closed after the defendant exited. Vila testified that while the garage door was open, he noticed an R-Max board
 
 [1]
 
 and approximately two to five filled black garbage bags.
 

 Vila, along with another officer, followed the defendant and stopped him shortly thereafter. When the defendant lowered his window to inquire why he was being stopped, Vila noticed the odor of marijuana emanating from the defendant’s car. The defendant stepped out of his vehicle and, as Vila and the defendant continued to talk and walk along the defendant’s vehicle, Vila observed, in the passenger seat, rolls of tape, one of which had marijuana residue, and black trash bags on the floor of the passenger side. Defendant was arrested and invoked his Miranda
 
 [2]
 
 rights.
 

 Vila and the other officer returned with the defendant to the residence and obtained the search warrant later that day. Vila testified that as he and other officers at the scene prepared to forcibly enter the residence through the front door, a conversation ensued between him and the defendant. During this conversation, the defendant informed Vila that there was a garage door opener in the defendant’s vehicle. It is unclear as to who initiated the conversation. The officers entered the residence and discovered a hydroponics lab. Several items were seized by the officers, including beer bottles, cigarette butts, and fingerprints from various items and from the walls of the residence. Also seized were 88.4 pounds of marijuana, and an additional bag of marijuana from the refrigerator.
 
 [3]
 

 The defendant filed a motion to suppress, and the trial court granted the motion as to 1) the investigative stop and any evidence obtained pursuant to the stop, 2) statements made by the defendant after he was arrested and invoked his
 
 Miranda
 
 rights, 3) beer bottles and any further evidence obtained from the beer bottles, 4) cigarette butts, 5) fingerprints obtained from walls or other items not authorized by the warrant, and 6) anything recovered from the refrigerator. Shortly thereafter, the defendant filed a motion to dismiss stating, in part, that the evidence against the defendant had been significantly diminished as a result of the motion to suppress. The court granted the motion to dismiss with prejudice. This appeal followed.
 

 The State argues that the evidence obtained from Vila’s stop of the defendant
 
 *1254
 
 should not have been suppressed. We agree. Section 901.151, Florida Statutes provides, in pertinent part:
 

 (2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person’s presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
 

 § 901.151(2), Fla. Stat. (2005).
 

 Prior to Vila stopping the defendant, Vila had followed-up on an anonymous tip that marijuana was being grown at the residence, personally detected the odor of marijuana emanating from the residence, and observed the filled trash bags and R-Max board in the residence’s garage. Section 901.151(2) merely requires that Vila had encountered the defendant “under circumstances which reasonably indicate[d] that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state....” Id. The circumstances under which Vila encountered the defendant were sufficient to satisfy this requirement.
 

 When examining whether a traffic stop is proper, “the first and most critical question is whether the police had a reasonable articulable suspicion that illegal activity was afoot at the time they sought to stop” the defendant. See
 
 State v. Herrera,
 
 991 So.2d 390, 392 (Fla. 3d DCA 2008) (citing
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Moreover,
 

 Police may stop and investigate a motor vehicle when there is a “founded suspicion” of criminal activity in the mind of the police officer. “A ‘founded suspicion’ ... has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in light of the officer’s knowledge.”
 

 State v. Gil,
 
 780 So.2d 297, 298 (Fla. 3d DCA 2001) (citing
 
 Kehoe v. State,
 
 521 So.2d 1094, 1095-96 (Fla.1988),
 
 rev’d on other grounds, Dobrin v. Fla. Dep’t of Highway Safety & Motor Vehicles,
 
 874 So.2d 1171 (Fla.2004)). When determining whether “there were ample grounds to give the police officer a founded suspicion of criminal activity, we look at the cumulative impact of the circumstances perceived by the officers.”
 
 Gil,
 
 780 So.2d at 299 (quoting
 
 Kehoe,
 
 521 So.2d at 1096). “An individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.”
 
 Illinois v. Wardlow,
 
 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citations omitted). Additionally, the “determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.”
 
 United, States v. Nunez,
 
 455 F.3d 1223, 1226 (11th Cir.2006) (quoting
 
 Wardlow,
 
 528 U.S. at 125, 120 S.Ct. 673).
 

 Vila stated in his affidavit that he had been a member of the Miami-Dade
 
 *1255
 
 County Police Department for sixteen and a half years, was “trained in the identification of narcotics and dangerous drugs,” and was “involved in numerous cases involving seizures of hydroponics labs where hundreds of pounds of grown marijuana were handled, smelled, and seized.” The foregoing, combined with the anonymous tip, the smell of marijuana emanating from the residence, Vila’s knowledge that hydroponics growr houses are generally kept secure and secret, Vila’s observation of the defendant’s demeanor upon entering the garage and his reaction to seeing Vila, and the defendant’s subsequent departure from the garage, provided sufficient grounds for reasonable suspicion. Vila himself testified that he stopped the defendant “for suspicion.” When conducting a stop, an officer “must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.”
 
 See Alvarez v. City of Hialeah,
 
 900 So.2d 761, 767 (Fla. 3d DCA 2005). Given the cumulative facts to which Vila testified, Vila had reasonable suspicion to conduct an investigative stop of the defendant. As such, the evidence obtained as a result of the stop was improperly suppressed.
 

 The State also argues that the court’s suppression of evidence obtained from the residence but not specifically set forth in search warrant was improper. The warrant obtained by Vila read, in pertinent part:
 

 “The Premises” being in, Miami-Dade County, Florida, hereinafter referred to as: “The Premises,” the laws of the State of Florida related to narcotics or drug abuse are being violated therein, to wit: Possession of a Controlled Substance, 893.13 Florida Statutes, as evidenced by a quantity of controlled substance, to wit: marijuana, exhaust fans/ vents, carbon dioxide cylinders, air conditioning units, sun circles, solar tracks, reflective light hoods, high pressure sodium vapor bulbs, ballasts, grow mediums, feeder reservoirs, drug paraphernalia, and/or currency, titles, receipts, and other documents and records evidencing illegal activity, or that would lead to the identification of persons responsible for the unlawful possession or distribution of controlled substances, hereinafter referred to as “The Property.”
 
 [4]
 

 (emphasis added).
 

 When issuing its verbal order partially granting the motion to suppress, the trial court ruled as follows on the evidence obtained pursuant to the search warrant:
 

 [Tjhere were [sic] testimony from the police officers that they recovered some beer bottles. It is clearly granted to the beer bottle [sic] and anything that is obtained from the beer bottle [sic].
 

 There might be testimony about cigarette butt [sic] obtained or recovered as a result of that as well, it is granted as a result of cigarette butt [sic].
 

 ... there was no testimony of robber glove, [sic] fingerprint recovered from key cover or other things off the wheel. There was testimony from the police officer that they looked into refrigerator [sic]. I don’t have a return of the warrant to indicate what items were taken.
 

 If in fact fingerprints were lifted from none [sic] inclusive evidence, that will be
 
 *1256
 
 anything that could not reportedly [sic] be related to hydroponics grow house [sic], then those fingerprints would have been obtained illegally without the proper documentation on the warrant and they will be suppressed. And as would anything recovered from the refrigerator or any fingerprints recovered from the walls unless there is clearly articulated, previously articulated indication that there were things on the wall from which the fingerprints were recovered that is [sic] related to hydroponics grow house [sic].
 

 Courts have found that “[officers executing a search warrant are ‘required to interpret it,’ and they are ‘not obliged to interpret it narrowly.’ ”
 
 United States v. Stiver,
 
 9 F.3d 298, 303 (3d Cir.1993) (citing
 
 Hessel v. O’Hearn,
 
 977 F.2d 299, 302 (7th Cir.1992)). Furthermore, “police armed with a valid search warrant may permissibly seize items not listed in the warrant when the incriminating nature of the items is immediately apparent.”
 
 Black v. State,
 
 630 So.2d 609, 613 (Fla. 1st DCA 1993) (citing
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). A “seizing officer is not required to ‘know certain items are contraband or evidence of a crime ... ’; what is required is that ‘the facts available to the [seizing] officer would ‘warrant a person of reasonable caution in the belief,’ that certain items may be ... useful as evidence of a crime.... ”
 
 Black,
 
 630 So.2d at 613-14 (citing
 
 Texas v. Brown,
 
 460 U.S. 730, 741-42, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). The beer bottles, cigarette butts and fingerprints obtained by the officers were properly seized because the officers could reasonably believe that these items would be “useful as evidence of a crime” and assist in ascertaining the identities of the individuals growing marijuana at the residence.
 
 See id.
 
 Accordingly, the beer bottles, cigarette butts, fingerprints, and any further evidence they yielded, should not have been suppressed.
 

 The court also erred in suppressing evidence obtained from the refrigerator in the residence. “[P]olice officers are allowed to search throughout the specified premises for the items described in the warrant, so long as the areas and containers searched are ones in which the described items might reasonably be found.”
 
 State v. Weber,
 
 548 So.2d 846, 847 (Fla. 3d DCA 1989) (citing
 
 United States v. Ross,
 
 456 U.S. 798, 820-21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982));
 
 see also State v. Ridgway,
 
 718 So.2d 318, 319 (Fla. 2d DCA 1998). Once the officers searched the refrigerator and discovered marijuana, they were authorized by the warrant to seize the contraband.
 

 Although the trial court suppressed the statements made by the defendant after he invoked his
 
 Miranda
 
 rights, it is unclear whether the court did so because it deemed the investigative stop illegal or whether the court found that the officers initiated conversation with the defendant. As such, we reverse the suppression of the post
 
 -Miranda
 
 statements and remand so that the court may consider witness testimony from officer(s) and/or defendant and rule on this issue in light of our finding that the investigative stop was proper.
 

 Lastly, the State also appeals the trial court’s order granting the defendant’s motion to dismiss with prejudice. The motion to dismiss was based in large part on the court’s suppression of evidence obtained by the officers. Because we reverse the suppression of the evidence obtained from the investigative stop as well as the suppression of the items obtained pursuant to the search warrant, we likewise reverse
 
 *1257
 
 the trial court’s order of dismissal in light of the evidence.
 

 Reversed and remanded.
 

 [1]
 

 . R-Max boards are fairly common insulation materials, but are often used in connection with hydroponics labs.
 

 [2]
 

 .
 
 See Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [3]
 

 .The record is unclear as to what specific items were seized. Vila testified, for example, that he did not remember whether cigarette butts were seized. Other allegedly seized items such as heat lamps, transformers, an irrigation system and rubber gloves were not suppressed by the trial court. As such, we do not address these items.
 

 [4]
 

 . Despite having ruled that the investigative stop of the defendant was improper, the court found that the officers had sufficient probable cause for the issuance of the warrant prior to their contact with the defendant.