**STATE of Missouri, Plaintiff–Respondent,**

v.

**Gerald W. MOORE, Defendant–Appellant.**

No. 21967.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 5, 1998.

Rosemary E. Percival, Asst. Public Defender, Kansas City, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Plaintiff–Respondent.

SHRUM, Presiding Judge.

A trial judge convicted Gerald W. Moore (Defendant) of the Class B felony of possessing a controlled substance in violation of § 195.202, RSMo 1994. The trial court found Defendant to be a prior offender and ordered that he be imprisoned for a term of ten years. Defendant appeals from the judgment.

Defendant challenges, as erroneous, the following trial court actions: (a) refusal to suppress the crack pipe seized from the house where Defendant lived and the crack cocaine seized from his person; (b) overruling Defendant's objections to testimony by detectives and a forensic chemist regarding the crack pipe and crack cocaine, and (c) admitting into evidence the pipe and cocaine. Defendant charges that the search and seizure violated his constitutional rights as the consent to search given by a third party "was

not effective." This court disagrees. We affirm the judgment.

## FACTS

On January 28, 1997, Springfield police officers Corporal Mark Deeds and Corporal James McCulloch went to 908 West State Street to look for Van Johnson, a burglary suspect. Upon arriving at this house, they first knocked on the front door. Thereon, David J. Adams came around the west side of the house. After questioning Adams, Deeds asked if he and McCullough could "go into the basement and look to ensure that Van Johnson was not there." Adams responded they "could." Adams then opened the basement door and "let [Deeds and McCulloch] in."

As Adams walked down the stairway, followed by the policemen, Deeds heard someone say, "Who is it?" Adams answered, "Popo[,]" a phrase explained as a "common slang term ... used in the street to refer to police." At that time, Deeds saw Defendant in the basement, standing against a ledge, with an object in his hand. He (Deeds) immediately recognized the object as a crack pipe. Deeds testified that as soon as Defendant "saw someone else was behind ... Adams, he [Defendant] threw the [pipe] over his shoulder, up on this ledge in the basement." Deeds then retrieved the pipe, placed Defendant under arrest, and "searched his person incident to arrest." Upon his search of Defendant, Deeds found and seized a plastic bag of material that was later confirmed to be crack cocaine.

At an evidentiary hearing on Defendant's motion to suppress evidence, Octavia Johnson testified that she and some of her relatives had rented the house at 908 West State Street beginning in 1993. She also testified that Adams lived at the house, she "made a place for [Adams] to stay," he [Adams] had "his own bedroom," and he "paid rent to Tonya or to Willie [whose names were on the lease]."

After the trial court overruled Defendant's motion to suppress, he waived a jury and was tried by the court. The trial court overruled Defendant's timely objections when the State offered the pipe and crack cocaine into evidence. The trial court convicted and sentenced Defendant. This appeal followed.

## DISCUSSION AND DECISION

■ Our review of the trial court's ruling on the motion to suppress is limited. We will affirm a trial court's ruling on a motion to suppress if the evidence is sufficient to sustain the trial court's finding. *State v. Jones,* 959 S.W.2d 829, 833[5] (Mo.App.1997). We defer to the trial court's vantage point for evaluating witness credibility and weighing the evidence. *State v. Smith,* 926 S.W.2d 689, 692[5] (Mo.App.1996). We view the evidence and inferences in the light most favorable to the ruling of the trial court. *State v. Hughes,* 899 S.W.2d 92, 95[2] (Mo.App.1994). We will not reverse the ruling of the trial court unless it is clearly erroneous. *State v. Harrison,* 957 S.W.2d 774, 776 (Mo.App. 1997).

■ A search or seizure without a warrant is valid under the fourth amendment if made with proper voluntary consent. *State v. Blair,* 638 S.W.2d 739, 750[8] (Mo.banc 1982); *State v. White,* 755 S.W.2d 363, 366[1] (Mo.App.1988). In order to establish consent, the state must prove by a preponderance of the evidence that: (1) the person giving the consent did so voluntarily, and (2) that the consenter had the authority to do so. *White,* 755 S.W.2d at 366[2]. Law enforcement officers may carry out a valid warrantless search based on consent if the officers reasonably believed the person giving consent had authority to do so, regardless of whether the officer's belief is later proved to be erroneous. *State v. Smith,* 966 S.W.2d 1, 7[7] (Mo.App.1997) (citing *Illinois v. Rodriguez,* 497 U.S. 177, 186, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148 (1990)).

Defendant's point asserts that Adams' consent to search this house was "not effective, because the police at the time of entry, could not have reasonably believed that Adams had common authority over the house." Continuing, Defendant argues:

"Although the police officers had seen Adams at the house several times in the past, they knew that a lot of people went in and out of the house, which was notorious

as a drug house. Adams did not tell the officers that he lived at the house or provide identification which listed 908 State Street as his address, nor did the police have any proof that Adams paid rent, received mail at the address, or was included in the lease."

The United States Supreme Court describes the standard for determining whether an officer's belief was reasonable as follows:

"As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ... "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid."

*Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161 (citations omitted). We now consider the facts presented to Deeds and McCulloch before obtaining Adams' consent to search.

The testimony of Deeds included the following. No one came to the front door of 908 West State Street in response to his knock. However, David J. Adams came around the west side of the house and asked, "Who is it?" After producing identification to Adams showing that he and McCulloch were policemen, Deeds asked if Van Johnson (the burglary suspect) was there. Adams answered, "No." Deeds then learned from Adams that he had left this house via a basement door, whereon Deeds asked if Johnson was "down there." Adams again answered "no" but said that Gerald Moore (Defendant) was in the basement.

Deeds had recognized Adams from his (Deeds') earlier visits to this house. He "had dealt with [Adams] in the past at this address" and believed that Adams lived there. Deeds explained: "908 West State ... was a well-known address to the Police Department at that time. I had been at that address on several occasions and arrested different individuals ... [and] Mr. Adams was at that address on those occasions[.]" These contacts had occurred "two to five times" in the

two- or three-month period before January 28, 1997. Deeds said he may or may not have seen Adams at this house before the two-three month time frame but also said "[W]e were running into him quite often at that address."

Because of his earlier experiences at this house, Deeds suspected that Adams might be lying to him about who was in the house. Accordingly, he asked Adams if he and McCulloch could go into the basement and assure themselves that Van Johnson was not there. Adams agreed, opened the basement door, and led the officers into the basement.

We find that the facts available to these officers at the moment of their entry would have warranted men of reasonable caution to believe that Adams had authority to consent to a search in this basement. First, Deeds had personal knowledge that Adams was at this house during Deeds' earlier visits, which he (Deeds) characterized as "quite often." Second, Adams was the only person at this house who responded to their knock. Third, Adams did not respond at the front door, but by coming from the basement and asking, "Who is it?" Fourth, Adams was aware that Van Johnson was not in the house but that Defendant was in the basement.

■ Nothing in the record suggests that officers should have had reason to doubt Adams' knowledge about who was in the house. We find the evidence sufficient to support a finding that Deeds and McCullough reasonably believed that Adams had authority to consent to the search of the basement.

■ Defendant's argument insists that the officers needed proof that Adams listed 908 West State Street as his address, or paid rent, or received mail at that residence. However, Missouri law recognizes that authority to give consent rests upon mutual use and joint access or control of property by an individual, not property law. *Smith,* 966 S.W.2d at 7; *State v. Nevels,* 712 S.W.2d 688, 691 (Mo.App.1986) (citing *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974)). Based on

the facts provided, it is reasonable that the officers believed that Adams had mutual use and joint access or control of the basement at 908 West State Street. We find that the search of the basement at 908 West State Street did not violate Defendant's constitutional rights. Consequently, the trial court did not err in overruling Defendant's motion to suppress and admitting the evidence about which Defendant complains.

Defendant's conviction and sentence are affirmed.

MONTGOMERY and BARNEY, JJ., concur.