STATE of Missouri, Respondent,

v.

George H. EVENSON, Appellant.

No. 23345.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 8, 2000.

Motion for Rehearing or Transfer Denied
Dec. 29, 2000.

Application for Transfer Denied
Feb. 13, 2001.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for Respondent.

Before BARNEY, C.J., CROW and GARRISON, JJ.

PER CURIAM.

George H. Evenson appeals his conviction, as a prior offender, § 558.016, of one count of deviate sexual assault, § 566.070; one count of attempt to commit sexual assault, §§ 564.011 and 566.040; and one

count of forcible sodomy, § 566.060.[1] The victim of these crimes was Evenson's live-in girlfriend, Lori Wisdom. Evenson was sentenced to seven years' imprisonment for deviate sexual assault; five years' imprisonment for attempt to commit sexual assault; and thirty-five years' imprisonment for forcible sodomy. The court ordered the sentences to be served concurrently with each other but consecutive to unrelated sentences he was already serving. Evenson claims two points of trial court error: (1) that the trial court erred in overruling his motion to suppress and his objections at trial to the admission of statements he made to his parole officer because he was not given *"Miranda"* warnings;[2] and (2) that the trial court erred in overruling Evenson's motion to suppress and objections to various exhibits because they were the product of an unreasonable search and seizure.

 Evenson does not contest the sufficiency of the evidence. All evidence and inferences will be viewed in the light most favorable to the ruling of the trial court and we will disregard all contrary evidence and inferences. *State v. Mitchell,* 20 S.W.3d 546, 552 (Mo.App.2000); *see State v. Kelley,* 945 S.W.2d 611, 613 (Mo. App.1997). In reviewing a trial court's rulings on motions to suppress, this court will look only to whether the evidence was sufficient to support the ruling and we will not substitute our judgment for that of the trial court. *Mitchell,* 20 S.W.3d at 552. We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous. *Id.*

## FACTS.

Lori Wisdom and her young son moved into Evenson's apartment in October of 1997. She brought along clothes, toys, and some furniture. While she was living with Evenson, Wisdom had her own key and helped pay the rent. According to her testimony, Evenson began to physically abuse her in November of 1997, with the abuse becoming worse in the ensuing December and January.

On December 31, 1997, Evenson and Wisdom were getting ready to retire when Evenson told Wisdom to perform oral sex on him. She refused and he replied "[y]ou do it or else." When she tried to get up to leave he grabbed her by the arm and yanked her back into the bed and held her. Wisdom testified that she then complied because she was afraid Evenson would hurt her.

On January 15, 1998, Evenson and Wisdom were in bed preparing to go to sleep. Evenson requested sex and grabbed Wisdom's chest and pinched her a number of times when she refused because she was tired. Wisdom eventually told him she was going to sleep on the couch and took a blanket and went and laid down on the couch. Evenson yelled at her to get back in the bedroom. Wisdom returned to the bedroom but sat down on the dresser because she was afraid. The pair continued to argue. According to Wisdom, Evenson seemed to calm down a bit and was sitting in the middle of the bed when, all of a sudden, he "lunged" at her, grabbed her by the throat and threw her on the bed. As she struggled, Evenson threw her off the side of the bed and continued to hit her while she was on the floor. When he released her briefly, she threw open the window and tried to scream, causing Evenson to slam the window shut, breaking it. After another futile escape attempt by Wisdom, Evenson got her on the bed, put his arm around her neck, forced her down and tried to have intercourse. According to Wisdom, Evenson was not able to complete the act because he could not maintain an erection, and he eventually let her up.

A few days later, on January 18 or 19, Evenson and Wisdom were in bed in the

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

2. Inferably, the ritual ordained by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

middle of the day. Evenson asked Wisdom to engage in anal intercourse. When Wisdom refused, Evenson rolled Wisdom onto her back, pushed her knees to her chest and inserted his penis into her rectum. Although she resisted and told Evenson a number of times to stop and that he was hurting her, Evenson did not stop until he had ejaculated. Wisdom testified that she was in so much pain following the assault that she had to go to the bathroom and sit in ice cold water.

Wisdom left Evenson a couple of days later when the two of them and Wisdom's son were returning from a trip to the library. Wisdom and Evenson were arguing, evidently over the fact that Wisdom's son had been loud in the Library. Wisdom was driving and Evenson was "backhanding" her and grabbing hold of her arm. Evenson evidently wanted some cigarettes and told her to pull over at a gas station. When he got out, Wisdom—afraid of what might happen to her when they got home—pulled away and went to a friend's house. Wisdom went to the police the next day and reported the assaults.

Detective Gregory Martin of the Osage Beach Police Department went to speak with Evenson, informed him of some of the allegations that had been made against him and asked him to come to the police department to talk. Evenson agreed and spoke with the detective, basically denying the allegations. This conversation was taped. Evenson was not Mirandized and was told that he was not under arrest and did not have to say anything if he didn't want to. After talking to the detective, Evenson was arrested and given the *Miranda* warnings.

That evening, Detective Martin and Wisdom went back to the house where she and Evenson lived. Wisdom's key would not work, so she crawled through a bathroom window and let the detective in. Detective Martin seized a number of items from the house and took some photographs, discussed *infra*, while Wisdom gathered her things in order to move into a shelter.

The following day, Evenson was interviewed by his probation officer while Detective Martin observed from another room.[3] Evenson was not given the *Miranda* warnings by the probation officer and apparently Evenson was not told he was being observed by Detective Martin. At trial, Detective Martin testified that Evenson told the probation officer about an "incident of anal sex" which took place on January 19, 1998. However, Evenson had not characterized the incident of anal sex as having been forcible. Additionally, Detective Martin related that Evenson had admitted hitting Wisdom during a trip to St. Louis and related that Evenson had stated to him that on January 15, 1998, although he and Wisdom argued, they had not had sexual intercourse.

*Discussion and Decision.*

*I.*

■ In his first point, Evenson claims the trial court clearly erred in allowing Detective Martin to testify concerning Evenson's interview by his probation officer because he was not Mirandized by his probation officer and because his conversation with his probation officer was confidential.[4]

Prior to trial, Evenson filed a motion to suppress seeking to suppress "statements taken from [Evenson] by law enforcement agents" because, *inter alia*, "[Evenson's] statements were made without [Evenson]

---

3. The probation officer testified at the suppression hearing that the reason she interviewed Evenson was that she had "received a computer hit" alerting her that Evenson was being investigated for the charges of "assault, sodomy and child abuse."

4. "Information and data obtained by a probation or parole officer shall be privileged information and shall not be receivable in any court. Such information shall not be disclosed directly or indirectly to anyone other than the members of a parole board and the judge entitled to receive reports...." § 559.125.2, RSMo Cum.Supp.1997.

first being advised of his constitutional rights. . . ." Following a pre-trial hearing, Evenson's motion to suppress was denied.[5] As related previously, Detective Martin testified at trial about his conversations with Evenson before Evenson was placed under arrest and about what he had heard when he observed Evenson being interviewed by the probation officer. Shortly after Detective Martin began to testify, Defense Counsel made the following objection:

> Your Honor, I will object to any question or any testimony by this man as to what Mr. Evenson said *at any time before he was told he was under arrest* for the reasons I said before, that it was a cohesive (sic) atmosphere, anything he might have—any testimony he may have, the officer may have, would be hearsay, prejudicial.

(emphasis added). Defense Counsel's objection was overruled. As Detective Martin was beginning to testify concerning his initial conversations with Evenson, Defense Counsel objected again "on the same basis." And shortly thereafter objected again by simply saying "Objection." Both these objections were overruled.

After the detective had finished describing his first talk with Evenson, he was asked about Evenson's interview with the probation officer. Defense counsel objected three times during this portion of the testimony, stating only "Objection" and providing no reason for the objections. These three objections were overruled. Defense Counsel then asked to approach the bench and argued:

> Your Honor, I don't understand the rule of evidence which allows him to say this, and I want it on the record the defendant is not charged with assault. He's

not taken the stand, whether or not to deny allegations of assault. If this is an exception to the hearsay rule that he has said something against his interests, he has not yet; there's no testimony that there's a statement against interests because he is not charged with assault.

The court overruled Defense Counsel's objection but granted his request "to show a continuing objection to this." More testimony followed, including a lengthy discussion concerning whether or not Detective Martin could use his notes to aid his testimony. The Court determined that the detective should be allowed to use his notes and then asked Counsel to approach the bench once again, where the following discussion took place:

> *The Court:* Was he under arrest at the time this interview took place?
>
> *Prosecutor:* Yes. Do you want testimony about the Miranda and so forth?
>
> *The Court:* Well, my only question is that the statement he makes to a probation officer when he had any reason to believe that law enforcement was going to be—did he know that the police officer was observing?
>
> *Prosecutor:* I don't know.
>
> *The Court:* Okay. I mean was the statement taken because he was on probation? There's confidentiality on probation. Was he in custody of a probation officer?
>
> *Prosecutor:* Yes.
>
> *The Court:* My concern is whether or not he was allowed to confidentiality under those circumstances.
>
> *Defense Counsel:* I believe I mentioned that before, yesterday.
>
> *Prosecutor:* Yesterday?
>
> *Defense Counsel:* I think I did.[6]

---

**5.** At the hearing on his motion to suppress, Evenson argued that his statements to Detective Martin prior to his being placed under arrest should have been suppressed because he had not been Mirandized and he was in a coercive atmosphere. Evenson further argued that his statements to his probation officer should have been suppressed because he

was not Mirandized. He made no argument concerning statutory confidentiality.

**6.** After searching the record, this Court can find no objection raised by Defense Counsel based on confidentiality or privilege between a probation officer and a defendant.

*The Court:* He objected on the basis that it was a probation officer, but I mean on what theory is this statement admissible?

*Prosecutor:* Well, first of all, it's a statement against interest in the sense that he is now admitting at least some of the facts corroborating the statement of ... Wisdom by saying that yes, we did have anal intercourse ... and denies that it was forcible. But it corroborates that.

And the other issue of the forcible rape, they had an argument on the 15th but didn't have sex, which is consistent. So I think those are statements consistent and corroborative with what she says.

. . . .

*The Court:* I understand, but I'm just not sure whether an—if he does not know the officer is in another room and this interview is going on with the probation officer, I can never remember in the course of time since I've been on the bench since 1981 I've ever had a police officer who was in an adjoining room come in and testify about a conversation he heard between a defendant and a probation officer from the other room. . . . Is it a voluntary statement?

. . . .

*The Court:* But what was the nature of the setting between the defendant and the probation officer at the time he was talking to her?

*Prosecutor:* Probation violation interview.

*The Court:* And I think those are—I don't think those are supposed to be with anybody else involved.

*Prosecutor:* I don't know.

*The Court:* Well, I've got enough doubt about it that I've got some concerns.

*Prosecutor:* Do you want me to move on at this point?

*The Court:* Yes.

The prosecution then went on to question the detective concerning other matters. Defense Counsel, however, made no mo-

tion to strike any previously received testimony regarding Evenson's interview with his probation officer.

■■■ "[A] ruling on a motion to suppress is interlocutory and subject to change during the course of the trial." *State v. Cardona–Rivera,* 975 S.W.2d 200, 203 (Mo.App.1998). "Therefore, a specific objection is required when the evidence is offered at trial to preserve the issue for appellate review." *Id.* "Failure to object at the earliest opportunity to the admission of evidence constitutes a waiver of the claim." *State v. Stewart,* 17 S.W.3d 162, 166 (Mo.App.2000).

■■■ Here, Defense Counsel never objected at trial to Detective Martin's testimony concerning Evenson's interview with the probation officer on the basis now being advanced on appeal. He initially objected to any statements made by Evenson "at any time before he was told he was under arrest." Then, while Detective Martin was testifying about the probation interview, he simply stated "Objection" three times and complained that the testimony should not be allowed because it didn't fall under an adequate hearsay exception. "To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory." *State v. Knese,* 985 S.W.2d 759, 766 (Mo. banc 1999), *cert. denied,* 526 U.S. 1136, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999); *State v. Ard,* 11 S.W.3d 820, 828 (Mo.App.2000). "A trial court will not be convicted of error in admitting testimony for a reason not presented to it, hence reasons urged in a brief which were not advanced to the trial court are of no avail." *Ard,* 11 S.W.3d at 828.

■■■ We note again, that after the trial court expressed its own reservations concerning confidentiality *sua sponte,* no further testimony was presented and Defense Counsel failed to ask that any of the preceding testimony be stricken. "To preserve error, a question must be objected to

prior to the answer if it appears that the answer will be objectionable. If for some reason the objection is untimely, then the answer should be reached by a motion to strike ." *State v. Woolford*, 545 S.W.2d 367, 372 (Mo.App.1976); *see State v. Williams*, 664 S.W.2d 226, 228 (Mo.App.1983). Evenson "cannot complain on appeal if he expresses apparent satisfaction with the action of the trial court." *Woolford*, 545 S.W.2d at 372; *see also Yaeger v. Olympic Marine Co.*, 983 S.W.2d 173, 186 (Mo.App. 1998)(In the absence of a motion to strike or withdraw, the question of admissibility is not reviewable.).

Finally, Evenson failed to preserve this claim for review in his motion for new trial, as required by Rule 29.11(d), Missouri Court Rules (1999).[7] *See State v. Winfield*, 5 S.W.3d 505, 511 (Mo. banc 1999). The only claim presented in Evenson's motion for new trial regarding admission of statements concerned "statements by the defendant made after he was approached by officers at his home and subject to a coercive atmosphere." Therefore, for the reasons set out above, Evenson failed to preserve the claims of error he has advanced in his first point.

■■■ Therefore, our review is limited to plain error pursuant Rule 30.20, Missouri Court Rules (2000). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Cobbins*, 21 S.W.3d 876, 880 (Mo.App.2000). "Unless a claim of plain error establishes the alleged error has produced a manifest injustice, this court will decline to exercise its discretion to review for plain error." *Stewart*,

17 S.W.3d at 166. Here, the probation officer in question never testified at trial. According to the testimony of Detective Martin, who overheard Evenson's conversation with the probation officer, while Evenson told his probation officer that he had engaged in anal sex on January 19, 1998, Evenson never characterized the incident as being non-consensual. Furthermore, while Evenson related that he and Wisdom had argued on January 15, 1998, Evenson never admitted to an attempted sexual assault against Wisdom on that date. Finally, our review of the record fails to show that in closing arguments the prosecutor ever made mention of any remarks Evenson had made to his probation officer. Evenson "must go beyond the mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *Kelley*, 945 S.W.2d at 615. Here none was shown. Point denied.

## II.

■■■ In his second point, Evenson claims that the trial court erred in admitting certain evidence seized from his home "without consent or a warrant" thereby violating his right to be free of unreasonable searches and seizures.

After Detective Martin arrested Evenson, he went with Wisdom back to the house to search it and to allow her to gather up her things and move to a shelter. Wisdom could not get her key to work in the door so she crawled through a bathroom window and then let the detective in the front door. Detective Martin took various pictures and gathered other evidence and then the two left.[8] At trial,

---

**7.** Rule 29.11(d), Missouri Court Rules (1999) reads, in pertinent part: "[i]n jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial. . . ."

**8.** Evenson complains of Exhibits 1–6 and 10. Exhibits 1–3 are photographs of the window that was evidently broken by Evenson during the attempted sexual assault; Exhibits 4–5 are photographs of a bruise and wound on Wis-

dom's arm and shoulder respectively; Exhibit 6 is a photograph of the kitchen area where an uncharged physical assault allegedly took place; Exhibit 10 is a coffee mug that was allegedly used in another uncharged physical assault. Although his point references Exhibits 1–6, and 10, it is apparent Evenson actually complains only of the admission of Exhibits 1–3, 6, and 10 since the photographs of Wisdom's injuries do not concern the issue of

the complained of evidence was admitted under the theory that Wisdom consented to the search. Evenson argued that she did not have the right to consent and he advances the same argument on appeal.

■ "A search or seizure without a warrant is valid under the fourth amendment if made with proper voluntary consent." *State v. Moore*, 972 S.W.2d 658, 660 (Mo.App.1998). "In order to establish consent, the state must prove by a preponderance of the evidence that: (1) the person giving the consent did so voluntarily, and (2) that the consenter had the authority to do so." *Id.* "Law enforcement officers may carry out a valid warrantless search based on consent if the officers reasonably believed the person giving consent had authority to do so, regardless of whether the officer's belief is later proved to be erroneous." *Id.* "A third party with joint access or control of the premises sought to be searched has authority to consent to a search, and that consent is valid against any absent persons with whom that authority is shared." *State v. Smith*, 966 S.W.2d 1, 7 (Mo.App.1997).

Evenson claims that when the detective and Wisdom returned to the home, Wisdom did not have the joint access or control necessary to give her authority to consent to a search of the house. In support of this assertion Evenson points out that Wisdom "had left [Evenson] two days earlier"; that she "had no intention of returning to [Evenson's] house alone"; that her house key "would not unlock the front door"; and that her name was not on the lease of the house. Evenson's argument fails.

■ Wisdom had been living at the house for a number of months. She had helped pay the rent. Her clothes and her son's clothes were there. Her son's toys were there. She had furniture there. The fact that she couldn't get her house key to open the door does not make Detective Martin's *belief* that she was authorized to

consent to the search "unreasonable." For all the detective knew, the lock was broken. Further, the fact that she went to a friend's house to "escape" Evenson, and was afraid to go back to the house alone, didn't mean that she no longer lived there. For example, if a person leaves their house because of a flood, it does not mean that when the danger subsides they no longer live there, and could not consent to a search. It further does not matter that her name was not on the lease. "The authority which justifies the third party consent does not rest upon the law of property but rests instead on mutual use of the property by persons generally having joint access or control for most purposes." *Smith*, 966 S.W.2d at 8. Here, Wisdom had joint access or control of the premises for most purposes and the trial court did not clearly err in admitting the complained of evidence. Evenson's second point is denied.

The judgment and sentence of the trial court are affirmed.

whether or not Detective Martin improperly searched the house.