NANCY STEFFEN RAHMEYER, Judge.
Kevin Estes appeals his conviction for the class C felony of stealing under section 570.030.[1] Estes contends that the trial court erred by admitting a self-incriminating statement obtained in violation of his constitutional rights and that this error was prejudicial because the admission of the statement allowed the State to present an accomplice liability theory to the jury. We affirm.
On February 14, 2003, Officer Gary McKinney of the Joplin Police Department received a dispatch concerning a hit-and-run accident. The dispatcher indicated that the suspected perpetrator was driving a 1980s-model, maroon vehicle. McKinney spotted a maroon four-door sedan with what appeared to be fresh front-end damage. As Officer McKinney approached the car, he saw Paul Cox and Stacy Kimberlin exit the car and begin walking away from the car. McKinney used his public address system to order Cox and Kimberlin to stop, but they ran instead. As McKinney pursued them on foot, Kimberlin stopped, but Cox continued to run and then turned and fired two shots at McKinney. Officer McKinney returned to the car, which still contained Kevin Estes, who was in the driver’s seat of the car, and a passenger named Amanda. McKinney ordered them out of the car and onto the ground, along with Kimberlin, and handcuffed all three. McKinney later testified that he handcuffed the three for officer safety because a passenger in the car had just fired a weapon at him, but the three were not under arrest. McKinney and another officer who had arrived at the scene then “re-engaged” Cox, and, after exchanging fire with Cox, McKinney even *459 tually fired a shot that fatally wounded Cox. After McKinney shot Cox, another police officer, who had arrived at the scene, placed Estes in the back of a police car and drove him to the Joplin Police Department.
Once Estes arrived at the police station, he was escorted to an investigation room. Joplin Police Corporal John Wales was instructed by another officer to watch Estes and talk with him while he was in the investigation room. Wales testified that he knew Estes was involved in the police shooting. He also stated that he knew Estes from his previous duties with the police department and admitted that he initiated a “cordial conversation” with Appellant before advising him of his Miranda rights. In response to a direct examination question about whether Wales read Estes his rights before talking to him, Wales replied, “[w]e started the initial conversation; I did not read him the advice of rights.” Wales then testified that after the cordial conversation, he informed Estes of his Miranda rights at 3:15 p.m. and began to interview Estes. At around 5:30 p.m., Joplin Police Detective Darren Gallup joined Wales and participated in the interrogation. Estes agreed to make a tape-recorded statement.
The taped statement shows that Detective Gallup again informed Estes of his Miranda rights, and Estes stated that he understood his rights and continued making the statement. Estes explained that although he did give Cox and Kimberlin a ride to the home from which the guns were stolen, he did not know that Cox and Kim-berlin had planned to steal the guns. He also stated that the guns were eventually placed in the trunk of a different vehicle and that Cox and Kimberlin intended to sell them. Wales testified that an investigator from Carthage had come over and wanted to search Estes’ vehicle. Estes signed a waiver allowing the police to search the vehicle, which contained the guns supporting Estes’ stealing conviction. Simultaneously with the police interviews with Estes, a different officer was interviewing Kimberlin, who admitted to the theft of the guns and implicated Estes as the person in possession of the guns.[2]
Estes filed a pre-trial motion to suppress the taped statement on the grounds that his statement was the fruit of an unlawful arrest. Following an evidentiary hearing on the matter, the trial court overruled the motion. At trial, the prosecutor introduced the taped statement and Estes objected on the grounds that not everything in the statement constituted an admission. The trial court overruled the objection. Estes now appeals his conviction on the grounds that the trial court erred by overruling his motion to suppress the taped statement. He concedes that this issue was not properly preserved for review and asks this Court to review the issue pursuant to the plain error rule, Rule 30.20.[3]
Appellate courts must use the plain error rule sparingly and not use it to justify a review of every allegation of error that has not been properly preserved for appellate review. State v. Evenson, 35 S.W.3d 486, 492 (Mo.App. S.D.2000). To be entitled to relief under the plain error rule, “[a] defendant must not only show prejudicial error occurred, but must also show that the error so substantially affect *460 ed the defendant’s rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected.” State v. Deckard, 18 S.W.3d 495, 497 (Mo.App. S.D.2000). The burden of proving the existence of a manifest injustice or miscarriage of justice rests with the defendant. State v. Franklin, 144 S.W.3d 355, 359 (Mo.App. S.D. 2004). Courts undertaking plain error review must conduct a two-step analysis. Id. Reviewing courts “first determine whether the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred.” Id. If the reviewing court finds that facially substantial grounds exist, it “then determinéis] whether a manifest injustice or a miscarriage of justice has actually occurred.” Id.
Estes contends that the trial court plainly erred by overruling his motion to suppress his taped statement and admitting that statement at trial because he was (1) seized without reasonable suspicion, (2) arrested in the absence of probable cause, and (3) subjected to custodial interrogation without being warned of his Miranda rights. Estes further contends that he was prejudiced by the introduction of the statement because the statement, in which Estes admitted knowing that the stolen guns were in his trunk and that Cox and Kimberlin intended to sell them, allowed the State to argue in closing argument for accessory liability as a potential basis for conviction even though Estes had been charged as a principal.
Estes does not develop his argument concerning the significance of being charged as a principal versus his conviction as an accessory other than to state: “Had Appellant’s statements been suppressed, the State would have had to depend on the testimony of Stacy Kimberlin, a witness whose credibility was highly questionable.” We consider any argument as to the legal significance of being charged as a principal but being convicted as an accomplice to be abandoned. Furthermore, Estes provides no law to support a contention that the prosecutor made an inappropriate closing argument. We conclude that Estes’ argument is that there would have been insufficient evidence to prove that Estes was an accomplice to the crime had his statements not been admitted.[4] We find no merit to his contention.
Accomplice liability requires a showing that the defendant, before or during the commission of an offense, acted with the purpose of promoting the commission of the offense by aiding, agreeing to aid, or attempting to aid another person in planning, committing, or attempting to *461 commit the offense. Section 562.041.1(2). Evidence supporting accomplice liability must include evidence of personal deliberation, although the evidence need not include evidence that the defendant performed each act constituting the elements of the crime, and “any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction.” State v. Clay, 975 S.W.2d 121,139 (Mo. banc 1998).
We conclude that Estes fails to facially establish substantial grounds for believing a manifest injustice or miscarriage of justice has occurred due to the admission of the statements because ample evidence, including the testimony of Kimberlin and the presence of the stolen guns in Estes’ car, supported the conviction. Kimberlin testified that on February 13, 2003, Estes drove a maroon four-door car to a Joplin motel where Kimberlin and Cox were staying to give them a ride to Carthage. Cox and Kimberlin were planning to go to Carthage to steal guns, cash, and checkbooks from the home of Chester Pendergraft, who was Kimberlin’s relative. Cox and Kimberlin intended to sell the guns, but Kimberlin also wanted to give one of the guns to Cox as a Valentine’s Day gift. Kimberlin explained that the theft of the guns was her idea, but she talked about the theft with Estes as well as Cox. She stated that Estes drove her, Cox, and Amanda to the Pendergraft house, and that before they entered the house, Estes helped measure the trunk of the car to see what length of a rifle it would accommodate. She further testified that once Cox took the guns from the house, he placed them in the trunk of the car, but Estes later helped move the guns into a hotel room and ultimately into the trunk of a car that Estes owned.
Because the prosecutor legitimately could have argued that Estes was an accomplice and because ample evidence supports the conviction even if the challenged statement had not been admitted, Estes has not shown the existence of any prejudice. See State v. Fuente, 871 S.W.2d 438, 443 (Mo. banc 1994) (finding that prejudice could not be established when, even if a challenged statement should have been suppressed, ample other evidence supported the conviction). Thus, we decline plain error review. Point denied. We affirm the conviction.
GARRISON, P.J., and PREWITT, J., concur.

. All statutory references are to RSMo 2000 unless otherwise indicated.

. In fact, Estes introduced the taped recording of Kimberlin, which was recorded on the night of the interview; he did so because of the apparent contradictions in Kimberlin’s statements that night and her statements at trial.

. All rule references are to Supreme Court Rules (2004), unless otherwise indicated.

. Estes' point does not properly raise an argument contending that the statements should have been suppressed because Officer Wales used the kind of question-first practice held unconstitutional in Missouri v. Seibert, - U.S. -, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), in which police officers deliberately refrain from giving Miranda warnings until an interrogation has produced a confession, next inform the suspect of his Miranda rights, and then lead the suspect to confess again. The Seibert court held that courts reviewing the effectiveness of a Miranda warning delivered in the midst of a question-first protocol should evaluate:
the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.
Seibert, 124 S.Ct. at 2612 (2004) (plurality opinion). Even though Estes does not properly raise a Seibert argument, we nonetheless find that the record does not contain a factual basis sufficient to support such an argument.